1  UTZURRUM LAW OFFICES, A.P.C.
   Joe Utzurrum, Esq.
2  Cal Bar Number 171701
   11620 Wilshire Blvd. Ste. 900
3  Los Angeles, California 90025
   Tele 310.887.1837
4  Email joe@ulawoffices.com

5
   Attorneys for Plaintiff, JOSEPH R.
6  MEEHAN

7

8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11 JOSEPH R. MEEHAN,              )  Case No.
                                  )
12           Plaintiff,           )  COMPLAINT FOR DAMAGES
                                  )  AND DEMAND FOR JURY TRIAL
13                                )
        vs.                       )
14                                )  Judge:
   NATASHA LOXTON aka NATASHA     )
15 HARRISON, OLIVIA HASLER and    )  Room:
   PRISCILLA KELLY,               )
16                                )  1. Libel
           Defendants,            )  2. Libel Per Se
17                                )  3. Trade Libel
                                  )  4. False Light
18                                )  5. Intentional Infliction of
                                  )     Emotional Distress
19                                )  6. Negligent Infliction of Emotional
                                  )     Distress
20                                )  7. Permanent Injunction
                                  )  8. Declaratory Relief
21
22

23       Plaintiff, JOSEPH R. MEEHAN, an individual, hereby, by and through

24 his counsel of record, allege as follows:

25                   **I.  JURISDICTION AND VENUE**

26 1. This court has original jurisdiction under 28 U.S.C. §1332, because all

27    Plaintiffs are citizens of the state of California and all defendants are

28    citizens of states other than the state of California.  Additionally, the

amount in controversy in this matter exceeds $75,000.00, exclusive of costs and interests as more specifically plead *infra*.

2. Venue is proper under U.S.C. §1391(b)(2), because a substantial amount of the events and omissions giving rise to the claim occurred in the Central District of California, and otherwise were knowingly directed at harming, and did harm, a citizen of the City of Los Angeles and State of California and the citizen's ability to take part in his occupation within the State of California, as more specifically plead *infra*.

## II.  PARTIES

3. Plaintiff, JOSEPH R. MEEHAN (**Meehan** or **Plaintiff**) is, and was, at all times relevant, domiciled in Los Angeles, California and thus a citizen of California. Plaintiff is referred to in the complaint herein by "Joey Ryan" which is one of Plaintiff's professional wrestling pseudonym or persona.

4. Defendant, Natasha Loxton also known as "Natasha Harrison" (**Loxton**) is, and was, at all relevant times, domiciled in Wales and thus a citizen of Wales.

5. Defendant, Olivia Hasler (**Hasler**), also known as, "Penelope Ford", is, and was, at all relevant times, domiciled in state of Florida and thus a citizen of Florida. Hasler performs as a professional wrestler and entertainer under the pseudonym "Penelope Ford".

6. Defendant, Priscilla Kelly (**Kelly**) is, and was at all relevant times, domiciled in the State of Georgia and thus a citizen of the State of Georgia.

## III.  FACTS COMMON TO ALL CLAIMS

7. In early 2000, Plaintiff began training to become a professional wrestler of the kind that is a theatrical performance as opposed to the competitive Olympic style Greco-Roman and freestyle wrestling.

Complaint for Damages and
Demand for Jury Trial

8. Before making his debut, Plaintiff spent approximately seven months training, which included fitness training, learning wrestling moves and learning how to develop a character and persona that an audience would find entertaining, among other things.

9. Plaintiff made his professional wrestling debut on or about September 2000.

10. Plaintiff wrestled using various names, personas and characters, with his most notable being that of "Joey Ryan". The character and persona of "Joey Ryan" was created and used in wrestling shows by Plaintiff beginning on or about 2001.

11. Plaintiff was also involved in wrestling promotions and in one instance was one of six founders of a successful Southern California promotions called Pro Wrestling Guerrilla, known as "PWG".

12. Plaintiff formed and is the principal of "Bar Wrestling" wherein the wrestling shows promoted by Bar Wrestling would be held in various bars in Southern California, including and notably, a popular establishment called the Bootleg Theater in Los Angeles that is also a popular social venue, American Legion Hall in Baldwin Park and Glass House in Pomona.

13. Any and all persons, including defendants, who know Plaintiff and the wrestling character "Joey Ryan", knows that the two are related to, associated with, principals of and owners and promoters of Bar Wrestling and that Bar Wrestling is a Los Angeles, California based promotion that operates in Los Angeles, California.

14. In addition to promotions, Plaintiff is, and was, a talented and entertaining wrestler and has made wrestling appearances in some of the more nationally recognized promotions, including World Wrestling

Entertainment (**WWE**) and Ring of Honor (**ROH**), Lucha Underground (**Lucha)** and Impact Wrestling (**Impact**).

15.   Through the years "Joey Ryan" became a popular wrestling character and thus on or about 2011, ten years after Plaintiff's creation of "Joey Ryan", Plaintiff produced merchandise that Plaintiff would sell at wrestling shows and on his website, for example, socks, t-shirts, sweatshirts, hats, toys, pins, comic books, autograph pictures, etc. that depict the "Joey Ryan" likeness, posed and in action.

16.   Having the ability to derive income from selling merchandise is one of the goals of professional wrestlers and is common for professional wrestlers after the wrestler achieves a higher level of popularity, which would be a market indicator on determining the probability of success of merchandise sales and justify incurring the cost of production.

17.   For the past twenty years, Plaintiff spent a great deal of resources, including, time and money, in promoting himself as a wrestler and promoting his wrestling shows, including Bar Wrestling, as well as developing innovative ways to keep his wrestling character "Joey Ryan" popular and/or interesting to the wrestling community.

18.   The popularity of a wrestler may be determined by how many persons are interested in the wrestler's activities and thoughts. Over the last fifteen years or so "social networking" or "social media" applications and websites have been one of the go-to indicators of the level of popularity and public interest in persons and subject matters.

19.   Plaintiff has performed in twelve different countries and over half of the United States. Beginning in 2016, Plaintiff's popularity and interest have grown to performing in more than two hundred events per year.

20.   Twitter is a social networking or social media service where users can publish or post messages and statements in order to interact with other

Complaint for Damages and
Demand for Jury Trial

users. The messages are called "tweets". Registered users can publish or post messages and statements, but non-registered users can only read them. Unless the registered users change the default setting, tweets can be read by any person who can access twitter.com. That is to say Twitter is not an application that is meant to make the user's messages more private. In the instant case the defendants all had, and have, their Twitter messages, i.e., tweets, retweets, replies, and likes, accessible and displayed to any person who can access Twitter.

21.    Twitter also permits account holders to "follow" each other so that each user can be directly notified of posts made by other accountholders.

22.    Twitter explains what a "Like" is in its "Help Center" webpage, "Likes are represented by a small heart and are used to show appreciation for a Tweet. You can view the Tweets you've liked from your profile page by clicking or tapping into the Likes tab."

23.    Twitter explains what a "Retweet" is in its "Help Center" webpage, "A Retweet is a re-posting of a Tweet. Twitter's Retweet feature helps you and others quickly share that Tweet with all of your followers. You can Retweet your own Tweets or Tweets from someone else. Sometimes people type 'RT' at the beginning of a Tweet to indicate that they are re-posting someone else's content. This isn't an official Twitter command or feature, but signifies that they are quoting another person's Tweet." As such, resending messages to the public and other users are made by the volitional act of the Twitter accountholder. All defendants herein retweets were made by the volitional act of each, and all of the defendants.

24.    Generally, a hashtag, i.e., "#", that is followed by specific characters make content more discoverable on social media platforms and assist in engaging with other social media users based on a common theme or interest. Clicking on or searching any hashtag directs a user to

Complaint for Damages and
Demand for Jury Trial

every social media post using the same hashtag, whether Twitter, Instagram, Facebook, etc. Twitter explains what a hashtag is in its "Help Center" webpage,

> A hashtag—written with a # symbol—is used to index keywords or topics on Twitter. This function was created on Twitter, and allows people to easily follow topics they are interested in.
> Using hashtags to categorize Tweets by keyword
> • People use the hashtag symbol (#) before a relevant keyword or phrase in their Tweet to categorize those Tweets and help them show more easily in Twitter search.
> • Clicking or tapping on a hashtagged word in any message shows you other Tweets that include that hashtag.
> • Hashtags can be included anywhere in a Tweet.
> • Hashtagged words that become very popular are often trending topics.

25.   Instagram is another social networking or social media service that allows users to upload videos and photos and uses hashtags to connect users in the same manner as Twitter. When one user wants to check on and routinely get updates on another Instagram account holder, the user can "follow" another Instagram user, much like Twitter.

26.   Instagram uses what it calls "stories" for Instagram accountholders to more closely directly connect with their followers. Stories are posts of videos, photos and statements made by the Instagram account holder that are made directly available to the Instagram accountholder's followers and remain available for twenty-four hours. After an item is posted to the accountholder's story, those following are notified of the story post.

27.   Up until June 2020 Plaintiff had 157,000 followers on his Instagram account and 143,000 followers on his Twitter account.

28.   Plaintiff has a Twitter "handle" of "JoeyRyanOnline", which is to say that such is the manner in which Plaintiff is identified in his Twitter social media

account. The Twitter handle is usually identified by the characters following "@". Additionally, a social media "handle" is the manner in which a person is identified in the social media application/website.

29.   In or around June 2020, "#SpeakingOut" is a social media trend and community that is being used to accuse wrestlers, promotors, personalities and journalists of sexual misconduct.

30.   Patreon is website or platform that allow artists and creators to publish content, e.g., videos', photos, etc. and also allows users to interact through chat, for example, by paying monthly membership fee. By paying the membership fee persons become "patrons". Plaintiff is and was a member of Patreon and does, and did, have subscribers who paid Plaintiff monthly membership fees that paid for access to Plaintiff's posted videos, photos, media, etc.

31.   Cameo is website to create income stream. As Cameo.com describes on its "Frequently Asked Questions" webpage, "Cameo operates the CAMEO™ Marketplace — through our website and app — that lets fans book a personalized video shout-out — a CAMEO video — from their favorite talent. Our mission is to create the most personalized and authentic fan experiences in the world."

32.   As to all of the defendants' conduct above and below described, specifically since defendants have published their statements on social networking sites, Plaintiff has,

  a. Lost followers on his Twitter account of at least 11,000 followers and is no longer getting 1,000 followers per month as Plaintiff was prior to defendant's statements;

  b. Lost followers on his Instagram account at least 8,000 followers and is no longer getting 1,000 followers per month as Plaintiff was prior to defendant's statements;

c. Lost venues for his Bar Wrestling promotions, including Bootleg Theatre in Los Angeles, American Legion Hall in Baldwin Park and Glass House in Pomona;

d. Lost revenues from Bar Wrestling in the amount of $1,500.00 per month from distribution and streaming services and $2,000.00 per event with two events per month;

e. Lost revenues from merchandising in the amount of $1,000.00 per month;

f. Lost revenues in his Patreon account in the amount of $3,000.00 per month;

g. Lost revenues in his Cameo account in the amount of $500.00 per month;

h. Lost revenues from Twitch account in the amount of $1,000.00 per month plus subscription shares and tips from subscribers;

i. Lost revenues from Wrestling Performance Bookings of $8,000.00 to $10,000.00 per month.

## IV.  FALSE STATEMENTS MADE ABOUT PLAINTIFF
### A.  Natasha Loxton

33.  As of September 17, 2020, defendant, Natasha Loxton (**Loxton**), had 751 "Following" and 10,000 "Followers" on her Twitter account wherein she used the handle "SierraLoxton". Natasha Loxton is also known as "Sierra Loxton" and performs as a professional wrestler and entertainer under the pseudonym "Sierra Loxton".

34.  On or about June 20, 2020, Loxton used her twitter account with the handle "SierraLoxton" to make the statement, "I've had more than one person come forward and told [sic] me that abuse you gave them. Don't you dare say you've trie [sic] to make it a safe place!! She would like to remain Anonymous still! But fuck you Joey Ryan!!! #speakingout

twitter.com/JoeyRyanOnline…" and then attached a statement, made available to all by a click-through link, that included, "Early last year Joey Ryan flew me in …He took me straight to a bar where I only had a few drinks (strong mixed cocktails) and it got me pretty messed up. …and continued to let him down, but he was persistent about it. He asked me if he could come in, I told him no because that wasn't a good idea. He said only for a minute and I still said no, he said can I at least kiss you, I felt really awkward so reluctantly said ok. I was struggling to open my cold medicine packet back from the door so he let himself in and opened it for me. He then pursued me and after countlessly saying I wasn't interested and said no, he sexually assaulted me. I found the courage to run to the bathroom and locked myself inside. …He told me to act like it never happened, it will be between you and me and wanted to make sure we were good." (in pertinent part.) (**Loxton First Defamatory Statement**)

35.    The attachment that was part of the Loxton First Defamatory Statement appeared to be originally prepared on another word processing application, that is to say, not on the Twitter application, and appeared to be prepared by the person stating she was sexually assaulted by Plaintiff. The person who prepared the attachment was, defendant Olivia Hasler (**Hasler**), also known as, Penelope Ford. Hasler is also known as "Penelope Ford" and performs as a professional wrestler and entertainer under the pseudonym "Penelope Ford".

36.    As of September 10, 2020, Loxton First Defamatory Statement was Replied to 24 times and "Retweeted" at least 259 times, with 753 "Likes".

37.    Loxton was fully aware that Plaintiff lived in Southern California and was intending to damage the reputation of a person that lived in California, because Loxton First Defamatory Statement indicates "Early last year

Joey Ryan flew me in" where the "in" was Los Angeles, California. The "bar" referred to in the statement is a bar in Los Angeles, California.

38.   On or about June 21, 2020, Loxton used her twitter account with the handle "SierraLoxton" to make the statement, "Another story regarding Joey Ryan from a woman who would like to remain Anonymous. This boils my blood #speakingout" and then attached a statement, made available to all by a click-through link, that included, "Joey Ryan was like my best friend….He started getting flirty. …He asked if he could take a shower with me. I said no, you should go to your room. He wouldn't leave. He started to touch my shoulders and kiss my arms. I felt paralyzed. I told him no and kept pushing him away. He didn't stop. This kept on for a while until I felt my mind zone out of what was  happening. He tried to take off my pants. I told him no. I was holding onto them trying to keep them on. He still tried to take them off. Eventually he stopped trying and just took off his….He was on top of me. …He didn't stop. He grabbed my limp hand, and made me grab his privates. He used my limp hand as a masturbation tool. …I told him I didn't want to do any of that. …I later found out I wasn't the only one he did this kind of thing with. I never want him to be able to do this again to someone…." (in pertinent part.) (**Loxton Second Defamatory Statement**)

39.   The attachment that was part of the Loxton Second Defamatory Statement appeared to be originally prepared on another word processing application that is to say, not on the Twitter application, and appeared to be prepared by the person stating she was sexually assaulted by Plaintiff. The person who prepared the attachment is, and was, defendant, Priscilla Kelly (**Kelly**). Kelly performs as a professional wrestler and entertainer.

40.   As of September 1, 2020, Loxton Second Defamatory Statement was Replied to 24 times and "Retweeted" at least 259 times, with 753 "Likes".

41.    On information and belief, both Loxton First Defamatory Statement and Loxton Second Defamatory Statement are available to view by any person interested or who happens upon Loxton's Twitter timeline. Also, no statement retracting Loxton First Defamatory Statement and Loxton Second Defamatory Statement has been made by Loxton.

42.    In addition, since Loxton First Defamatory Statement and Loxton Second Defamatory Statement includes the "#SpeakingOut" identifier, any person who google searches #SpeakingOut will necessarily read Loxton First Defamatory Statement and Loxton Second Defamatory Statement.

43.    Loxton First Defamatory Statement and Loxton Second Defamatory Statement is, and was, false, including that Plaintiff did not assault Hasler or Kelly in any way shape or form, sexual or otherwise. Any intimate acts between Plaintiff and Hasler or Kelly were made with Hasler's and Kelly's clear consent.

**B.    Olivia Hasler**

44.    Defendant, Oliva Hasler (**Hasler**) is also known as "Penelope Ford" and performs as a professional wrestler and entertainer under the pseudonym "Penelope Ford".

45.    On or about June 20, 2020, defendant Hasler prepared the following statement, "Early last year Joey Ryan flew me in …He took me straight to a bar where I only had a few drinks (strong mixed cocktails) and it got me pretty messed up. …and continued to let him down, but he was persistent about it. He asked me if he could come in, I told him no because that wasn't a good idea. He said only for a minute and I still said no, he said can I at least kiss you, I felt really awkward so reluctantly said ok. I was struggling to open my cold medicine packet back from the door so he let himself in and opened it for me. He then pursued me and after countlessly saying I wasn't interested and said no, he sexually assaulted me. I found

Complaint for Damages and
Demand for Jury Trial

the courage to run to the bathroom and locked myself inside. …He told me to act like it never happened, it will be between you and me and wanted to make sure we were good." (in pertinent part.) (**Hasler Defamatory Statement**)

46.   On or about June 20, 2020, Hasler directed Loxton to use Loxton's Twitter account with the handle "SierraLoxton" to publish Hasler Defamatory Statement.

47.   Hasler was fully aware of the many followers that Loxton had on her Twitter account and was fully aware that the Hasler Defamatory Statement would be published, and was published, would be republished, and was republished, to other Twitter users.

48.   On information and belief, Hasler Defamatory Statement is available to view by any person interested or who happens upon Loxton's Twitter timeline. Also, no statement retracting Hasler Defamatory Statement contained in the Loxton First Defamatory Statement has been made by Hasler.

49.   In addition, since Hasler Defamatory Statement includes the "#SpeakingOut" identifier, any person who google searches #SpeakingOut will necessarily read Hasler Defamatory Statement.

50.   Hasler was fully aware that Plaintiff lived in Southern California and was intending to damage the reputation of a person that lived in California, because Hasler Defamatory Statement expressly states that Plaintiff "flew me in", Hasler did meet Plaintiff in Southern California and Plaintiff did tell Hasler that he lived in Southern California.

51.   Hasler Defamatory Statement is, and was, false, including that Plaintiff did not assault Hasler in any way shape or form, sexual or otherwise. Any intimate acts between Plaintiff and Hasler were made with Hasler's clear consent.

## C.  Pricilla Kelly

52.  Defendant, Priscilla Kelly (**Kelly**). Kelly performs as a professional wrestler and entertainer.

53.  On or about June 21, 2020, defendant Kelly prepared the following statement, that included, "Joey Ryan was like my best friend….He started getting flirty. …He asked if he could take a shower with me. I said no, you should go to your room. He wouldn't leave. He started to touch my shoulders and kiss my arms. I felt paralyzed. I told him no and kept pushing him away. He didn't stop. This kept on for a while until I felt my mind zone out of what was  happening. He tried to take off my pants. I told him no. I was holding onto them trying to keep them on. He still tried to take them off. Eventually he stopped trying and just took off his….He was on top of me. …He didn't stop. He grabbed my limp hand, and made me grab his privates. He used my limp hand as a masturbation tool. …I told him I didn't want to do any of that. …I later found out I wasn't the only one he did this kind of thing with. I never want him to be able to do this again to someone…." (in pertinent part.) (**Kelly Defamatory Statement**)

54.  On or about June 21, 2020, Kelly directed Loxton to use Loxton's Twitter account with the handle "SierraLoxton" to publish Kelly Defamatory Statement.

55.  Kelly was fully aware of the many followers that Loxton had on her Twitter account and was fully aware that the Kelly Defamatory Statement would be published, and was published, would be republished, and was republished, to other Twitter users.

56.  On information and belief, Kelly Defamatory Statement is available to view by any person interested or who happens upon Loxton's Twitter timeline. Also, no statement retracting Kelly Defamatory Statement

contained in the Loxton Second Defamatory Statement has been made by Kelly.

57.    In addition, since Kelly Defamatory Statement includes the "#SpeakingOut" identifier, any person who google searches #SpeakingOut will necessarily read Kelly Defamatory Statement.

58.    Hasler was fully aware that Plaintiff lived in Southern California and was intending to damage the reputation of a person that lived in California, because Plaintiff and Kelly were friends and Plaintiff did tell Hasler that he lived in Southern California.

59.    Kelly Defamatory Statement is, and was, false, including that Plaintiff did not assault Kelly in any way shape or form, sexual or otherwise. Any intimate acts between Plaintiff and Kelly were made with Kelly's clear consent.

## I. <u>CLAIM I</u>
(Libel against all defendants and each of them)

60.    Plaintiff incorporates by reference paragraphs 1 through 59 as though fully set forth herein.

61.    Defendants made and published the defamatory statements as specifically described above and herein,

     a. Loxton First Defamatory Statement;

     b. Loxton Second Defamatory Statement;

     c. Hasler Defamatory Statement;

     d. Kelly Defamatory Statement.

62.    Defendants used at least Twitter, including on and in each of their own Twitter subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1) Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on

Complaint for Damages and
Demand for Jury Trial

Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

63.   On information and belief, defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

64.   Prior to publishing the defamatory statements, defendants were fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

65.   Prior to publishing the defamatory statements, defendants were fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Twitter's membership, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

66.   Prior to publishing the defamatory statements, defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by

reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

67.     Defendants published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendants were fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Southern California.

68.     Defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendants intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendants were fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

69.     It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

70. Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements. Each of the defendants responded by repeating more statements that (1) Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

71. Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

72. Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

73. Prior to publishing the defamatory statements, defendants failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

74. The hundreds to thousands of person who did read defendants' defamatory statements on Twitter and other social media websites understood the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean that (1) Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in

sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

75.     Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

> (1) The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and/or wrestling promotor;

> (2) The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

> (3) The defamatory statements discouraged others from associating or dealing with Plaintiff.

76.     Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

77.     Defendant's defamatory statements caused Plaintiff to lose

employment and income.

78.   Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

79.   Plaintiff's personal and professional reputation were harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendants continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

80.   Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

81.   Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages, including those special and general,  against each of the defendants and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## II.CLAIM II

(Libel Per Se against all defendants and each of them)

82.   Plaintiff incorporates by reference paragraphs 1 through 81 as though fully set forth herein.

83.   Defendants made and published the defamatory statements as specifically described above and herein,

   a. Loxton First Defamatory Statement;

b. Loxton Second Defamatory Statement;

c. Hasler Defamatory Statement;

d. Kelly Defamatory Statement.

84.    Defendants made and published the defamatory statements as specifically described above, which among other things falsely accused Plaintiff of committing a crime that was a felony, e.g., rape, assault, and sexual battery, and accused Plaintiff of being unfit and incompetent to practice in his profession as a professional wrestler and wrestling promotor.

85.    Defendants used  at least Twitter, including on and in each of their own Twitter subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

86.    On information and belief, defendants did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein

87.    Prior to publishing the defamatory statements, defendants were fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because all defendants were users, subscribers, account holders of Twitter and had

Complaint for Damages and
Demand for Jury Trial

Twitter handles and thus understood how Twitter and social media websites worked.

88.    Prior to publishing the defamatory statements, defendants were fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Twitter's membership, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

89.    Prior to publishing the defamatory statements, defendants were fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

90.    Defendants published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendants were fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

91.    Defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling

promotor, i.e., defendants intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendants were fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

92.    It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

93.    Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements. Each of the defendants responded by repeating more statements that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

94.    Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

95.    Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

96.     Prior to publishing the defamatory statements, defendants failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

97.     The hundreds to thousands of persons who did read defendant's defamatory statements on Twitter and other social media websites understood that the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

98.     Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

(1) The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and/or wrestling promotor;

(2) The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested

in Plaintiff, professional wrestling and wrestling promotions; and

(3) The defamatory statements discouraged others from associating or dealing with Plaintiff.

99.   Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

100.   Defendant's defamatory statements caused Plaintiff to lose employment and income.

101.   Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

102.   Plaintiff's personal and professional reputation was harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendants continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

103.   Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

104.   Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages, including those special and general,  against each of the

defendants and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## III.CLAIM III

(Trade Libel against all defendants and each of them)

105.  Plaintiff incorporates by reference paragraphs 1 through 104 as though fully set forth herein.

106.  Defendants made and published the defamatory statements as specifically described above, which among other things falsely accused Plaintiff of committing and rendering unprofessional and substandard services as a professional wrestler, wrestling promotor, and additionally tarnished the "Joey Ryan" brand name. Plaintiff has spent over twenty years in developing his brand by promoting his wrestling, personality, and character portrayal of "Joey Ryan" more immediately, through social media websites, including Twitter, Facebook, YouTube, Patreon and Cameo. Patreon and Cameo garnered monthly revenues to Plaintiff. The Joey Ryan brand also generated revenues in merchandising, ironically purchased by some of Joey Ryan's false accusers.

107.  Defendants made and published the defamatory statements as specifically described above and herein,

　　　a. Loxton First Defamatory Statement;

　　　b. Loxton Second Defamatory Statement;

　　　c. Hasler Defamatory Statement;

　　　d. Kelly Defamatory Statement

108.  Defendants used  at least Twitter, including on and in each of their own Twitter subscriptions, accounts, identities, and handles, to write, and

thereby publish, the defamatory statements described above and
incorporated by reference herein, which included, that (1)  Plaintiff
assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on
Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would
be considered a felony;(4) defendants engaged in sexual acts with Plaintiff
without Defendants' consent; and/or (5) defendants were forced by
Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of
fear, threat and intimidation.

109.  On information and belief, defendants did use other social media
websites to write, and thereby publish, the defamatory statements
described above and incorporated by reference herein

110.  Prior to publishing the defamatory statements, defendants were fully
aware that Twitter and the other social media websites used to publish
defendant's defamatory statements described above and incorporated by
reference herein had members and subscribers located worldwide and
were connected to the professional wrestling industry, because
defendants were users, subscribers, account holders of Twitter and had
Twitter handles and thus understood how Twitter and social media
websites worked.

111.  Prior to publishing the defamatory statements, defendants were fully
aware that Twitter had a membership of approximately in excess of three
hundred million persons and that by publishing the defamatory
statements, the defamatory statements would be read by hundreds to
thousands of Twitter's membership, because defendants were users,
subscribers, account holders of Twitter and had Twitter handles and thus
understood how Twitter and social media websites worked.

112.  Prior to publishing the defamatory statements, defendants were fully
aware that publishing the defamatory statements described above and

1
2
3
4
5
6
7

incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendants did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

8
9
10
11
12
13

113.  Defendants published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendants were fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

14
15
16
17
18
19
20
21
22
23

114.  Defendants were fully aware that Defendants defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendants intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendants were fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

24
25
26
27
28

115.  It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff

without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

116.  Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements. Each of the defendants responded by repeating more statements that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

117.  Prior to publishing the defamatory statements, defendants knew and otherwise were fully aware that the defamatory statements were not true.

118.  Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

119.  Prior to publishing the defamatory statements, defendants failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

120.  The hundreds to thousands of persons who did read defendant's defamatory statements on Twitter and other social media websites understood that the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to

Complaint for Damages and
Demand for Jury Trial

mean that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

121.  Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

(1) The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and/or wrestling promotor;

(2) The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

(3) The defamatory statements discouraged others from associating or dealing with Plaintiff.

122.  Defendants knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendants were users, subscribers, account holders of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

123.  Defendant's defamatory statements caused Plaintiff to lose employment and income.

124.  Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

125.  Plaintiff's personal and professional reputation was harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendants continue to make the same defamatory statements as described and continue to permit the defamatory statements to go viral on social media websites.

126.  Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

127.  Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages, including those special and general,  against each of the defendants and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## IV.CLAIM IV

(False Light against all defendants and each of them)

128.  Plaintiff incorporates by reference paragraphs 1 through 127 as though fully set forth herein.

129.  Defendants published the defamatory statements as specifically described above and incorporated herein, as

Complaint for Damages and
Demand for Jury Trial

a. Loxton First Defamatory Statement;

b. Loxton Second Defamatory Statement;

c. Hasler Defamatory Statement;

d. Kelly Defamatory Statement

and the statements showed Plaintiff in a false light.

130.  The false light was highly offensive to a reasonable person in Plaintiff's position, because Plaintiff did not rape, assault, commit sexual battery on any person.

131.  Defendants knew that the publication of the defamatory statements would create a false impression that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

132.  Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendants to stop the publication of the defamatory statements.

133.  Prior to publishing the defamatory statements, defendants knew that publishing the defamatory statements would create a false impression about Plaintiff.

134.  Prior to publishing the defamatory statements, defendants acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

135.  Prior to publishing the defamatory statements, defendants failed to use

1
2
3

reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

4
5

136.  Plaintiff sustained reputational and financial harm as result of defendant's publication of the defamatory statements.

6
7
8
9
10

WHEREFORE Plaintiff requests that this court grant relief in compensatory damages, including those special and general,  against each of the defendants and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements and any equitable relief based on principles that are fair and just.

11

WHEREFORE, Plaintiff prays for judgment as set forth below.

12

**V.CLAIM V**

13
14

(Intentional Infliction of Emotional Distress against defendants and each of them)

15
16

137.  Plaintiff incorporates by reference paragraphs 1 through 136 as though fully set forth herein.

17
18

138.  Defendants published the defamatory statements as specifically described above and incorporated herein, as

19
20
21
22

     a. Loxton First Defamatory Statement;
     b. Loxton Second Defamatory Statement;
     c. Hasler Defamatory Statement;
     d. Kelly Defamatory Statement

23

139.   Defendant's conduct was outrageous.

24
25

140.  Defendant's conduct was intended by each defendant, or carried out in reckless disregard, to cause Plaintiff emotional distress.

26

141.  Plaintiff suffered severe emotional distress.

27

142.  Defendant's conduct was a substantial factor in causing Plaintiff's

28

emotional distress.

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages, including those special and general,  against each of the defendants and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## VI.CLAIM VI

(Negligent Infliction of Emotional Distress against all defendants and each of them)

143.  Plaintiff incorporates by reference paragraphs 1 through 136 as though fully set forth herein.

144.  Defendants published the defamatory statements as specifically described above and incorporated herein as,

      a. Loxton First Defamatory Statement;

      b. Loxton Second Defamatory Statement;

      c. Hasler Defamatory Statement;

      d. Kelly Defamatory Statement

145.  Prior to publishing the defamatory statements, defendants failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

146.  Defendants were at least negligent.

147.  Plaintiff suffered severe emotional distress.

148.  Defendant's negligent conduct was a substantial factor in causing Plaintiff's emotional distress.

1
2
3
4
5

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages, including those special and general,  against each of the defendants and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

6

WHEREFORE, Plaintiff prays for judgment as set forth below.

7

### VII.CLAIM VII

8

(Injunctive Relief against all defendants and each of them)

9
10

149.  Plaintiff incorporates by reference paragraphs 1 through 148 as though fully set forth herein.

11
12
13
14
15
16
17
18

150.  Defendants has caused irreparable harm to Plaintiff's businesses, in reputation, in income, in the goodwill in the business that no amount of damages could adequately compensate Plaintiff for injuries he sustained, is sustaining and will sustain, because defendant's defamatory statements continue to be posted on internet websites such as Twitter, and defendants continue to assert that the statements are true thereby destroying Plaintiff's reputation and business in an ongoing and continuous manner.

19
20
21
22

151.  Defendants continues to publish the defamatory statements on social media making it impossible for Plaintiff to practice as a professional wrestler and wrestling promotor and thus limiting Plaintiff's income, making the harm ongoing.

23
24

152.  Defendant's conduct is a substantial factor in Plaintiff's ongoing harm.

25
26
27

153.  Plaintiff prays this court for an order enjoining defendant, and each of them, from making and publishing any, and all, defamatory statements that (1)  Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a

28

manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation

154. Plaintiff prays this court for an injunction ordering defendants, and each of them, to retract the defamatory statements and to take the defamatory statements down from the websites in which the statements were made and published, specifically defendants should retract and take down any, and all, defamatory statements made and published by defendants that (1) Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation; and any iteration of such statements,

## VIII.CLAIM VIII

(Declaratory Relief against all defendants and each of them)

155. Plaintiff incorporates by reference paragraphs 1 through 154 as though fully set forth herein.

156. So that Plaintiff may present to social media websites that the herein defamatory statements violate the terms and conditions of social media websites, if they do, regarding publication of false and defamatory statements that tend to harass and harm other persons, Plaintiff prays that this court declare as false statements that (1) Plaintiff assaulted Hasler and Kelly; (2) Plaintiff committed a sexual battery on Hasler and Kelly; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendants engaged in sexual acts with Plaintiff without

Defendants' consent; and/or (5) defendants were forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation

## PRAYER FOR RELIEF

Plaintiff, MEEHAN, prays as to the first through eighth claims:

1. Award Plaintiff $200,000.00 in economic damages as to each of the defendants or the amount lost by Plaintiff as a result of defendant's conduct multiplied by the months from June 21, 2020 to the date of the award of economic damages;

2. Award Plaintiff $5,000,000.00 as to each of the defendants in non-economic damages.

3. Order an injunction permanently restraining and enjoining defendants as set forth in Claim VII including:

a. Preventing defendants from making and publishing the defamatory statements or any iteration of the defamatory statements as set forth above and herein;

b. Ordering defendants to retract the defamatory statements as set forth above and herein;

c. Ordering defendants to direct any, and all, websites that defendants posted the defamatory statements as set forth above and herein, to delete the defamatory statements;

4. Award Plaintiff his actual damages;

5. Award Plaintiff his costs, investigatory fees and expenses to the fullest extent provided by law;

6. Award punitive and exemplary damages against defendants and in favor of Plaintiff in the sum of $10,000,000.00 by reason of defendants', and each of them, malice, hatred, ill-will, despicable and intentional acts.

7.     Awarding Plaintiff such additional and further relief as the Court deems just and proper.

Dated:  September 24, 2020

                                        UTZURRUM LAW OFFICES, A.P.C.



                                        By: _____/s/ Joe Utzurrum_____

                                        Joe Utzurrum, Attorney for Plaintiff,

                                        JOSEPH R. MEEHAN

UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.
Cal Bar Number 171701
11620 Wilshire Blvd. Ste. 900
Los Angeles, California 90025
Tele 310.887.1837
Email joe@ulawoffices.com

Attorneys for Plaintiff, JOSEPH R. MEEHAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| JOSEPH R. MEEHAN, | ) | Case No. |
|---|---|---|
| Plaintiff, | ) | DEMAND FOR JURY TRIAL |
| vs. | ) | |
| NATASHA LOXTON aka NATASHA HARRISON, OLIVIA HASLER and PRISCILLA KELLY, | ) | |
| Defendants, | ) | |

Plaintiff, JOSEPH R. MEEHAN, hereby, by and through its counsel of record, request and demand that the case and matters therein be tried in front of a jury.

Dated:  September 24, 2020

UTZURRUM LAW OFFICES, A.P.C.

By: _____/s/ Joe Utzurrum_____

Joe Utzurrum, Attorney for Plaintiff,

JOSEPH R. MEEHAN

Complaint for Damages and
Demand for Jury Trial